■ OIL HEAT INSTITUTE OF LONG ISLAND INSURANCE TRUST, Respondent, v GERBER LIFE INSURANCE COMPANY, Appellant, et al., Defendants. [735 NYS2d 79] —Order, Supreme Court, New York County (Herman Cahn, J.), entered March 28, 2000, which, to the extent appealed from, denied defendant Gerber Life Insurance Company's motion for summary judgment, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

In or about April 1998, the Oil Heat Institute of Long Island, Inc. endeavored to create a "self-insurance" program to provide its members and their employees (i.e., truck drivers and clerical workers) medical insurance. To that end, plaintiff Oil Heat Institute of Long Island Insurance Trust (OHI) was established. Defendant Island Group Administration, Inc. (IGA) submitted certain cost projections and a proposal to administer the self-insurance fund to OHI, which included the cost of an aggregate stop-loss insurance policy to be taken out with defendant Gerber Life Insurance Company (Gerber). OHI accepted IGA's proposal and IGA thereafter set up the self-insurance plan. An aggregate stop-loss policy was issued by Gerber to OHI (the ASL policy) and defendant RMTS Associates (RMTS) was the policy broker. IGA also acted as OHI's administrator and agent.

The ASL policy, the term of which ran from July 1, 1998 to June 30, 1999, was designed to reimburse the self-insurance fund for the amount of "Eligible Benefits" paid during the contract year which exceeded a stipulated sum set forth in the ASL policy, known as the aggregate "attachment point." The attachment point is calculated based upon the size of the eligible work force per month multiplied by $273.49 (the latter number being defined in the ASL policy as 125% of the expected benefit rate of $218.79).

As the size of OHI's workforce was dynamic, the attachment point could not be determined until after the end of the contract year, or June 30, 1999. Part III (B) of the ASL policy provides:

"The Contract Holder [OHI] or Plan Administrator [IGA] must give the Company [Gerber] a statement within two weeks after the end of each calendar month. It must show all Eligible Benefits paid to or on behalf of all Covered Persons during the month. It must be in the format outlined in Part V. *If at the end of the Contract Year the aggregate Eligible Benefits exceeds the Attachment Point, the Company will within a reasonable time after receipt of documented evidence of the Contract Holder's payment reimburse* the Contract Holder for the Covered Percent of such Eligible Benefits in excess of the Attachment Point" (emphasis added).

Part V of the ASL policy states that the plan administrator (IGA) "shall give [Gerber] within two weeks after the end of each calendar month" a written statement, on a form prescribed by Gerber, information including: "Eligible Benefits Processed by the Plan Administrator"; "Payments made"; "Amounts of Eligible Benefits denied"; "Amounts not paid due to any deductible"; and other pertinent information.

OHI commenced the within action on June 30, 1999, the day the term of the ASL policy expired, asserting, in its first cause of action, that Gerber "refus[ed] to repay on any reinsurance stop-loss claims by plaintiff's insureds." In the second cause of action, OHI seeks specific performance directing Gerber to issue a letter to a lender of OHI "stating that claims exceeding the attachment point in the agreement will be reimbursed as specified in the agreement." OHI avers that Gerber and RMTS have "refused to issue said letter without conducting an audit * * * [and] refuses to conduct an audit until the end of the year when all the claims are paid."

Gerber subsequently moved for summary judgment dismissing the complaint, which was denied by the motion. The motion court found that the ASL policy specifically provided that OHI was to pay its eligible members and then be reimbursed by Gerber, and that the attachment point could not be calculated until the term of the ASL policy expired, or June 30, 1999, which is the same date that OHI commenced the within action. The court also found, however, that issues of fact exist as to, *inter alia*, whether, as OHI contends, it paid $88,460 over the attachment point as calculated in the ASL policy, and whether Gerber acted in good faith when it refused to issue a letter to OHI's lender bank. We disagree and reverse.

The ASL policy clearly and unequivocally states that at the end of the contract year (June 30, 1999), Gerber would "within a reasonable time after receipt of documented evidence of the Contract Holders payment," reimburse OHI for the sums paid

above the attachment point. Yet, OHI argues, alternatively, that no claim is necessary under the ASL policy, a clearly meritless position, that this action constitutes a claim, and that IGA, OHI's agent, may have submitted a claim although OHI is unaware if it did so. Indeed, OHI, recognizing the feebleness of its position, admits in its brief that it is unclear what, if anything, is owed by Gerber because IGA, purportedly in possession of all the necessary documentation, has failed to produce such. OHI then reveals the real motivating factor behind this action by stating "the only way that a claim could be assembled in light of Gerber's list of requirements was to commence legal action so that such documents and information could be provided in CPLR-authorized disclosure."

It is well settled that a party claiming ignorance of critical facts must demonstrate that such ignorance was unavoidable and that reasonable attempts were made to discover facts which would give rise to a triable issue (*Lumbsy v Gershwin Theater*, 282 AD2d 578; *Lo Breglio v Marks*, 105 AD2d 621, *affd* 65 NY2d 620). Here, no such showing was made or even attempted and, given the timing of this action, it is apparent that OHI never intended to make any attempt to ascertain the necessary facts and obtain the supporting documentation.

We would also note that the amount OHI claims is owed by Gerber in this action, $88,460, is set forth in the affidavit of Kevin Rooney, the Executive Vice President of OHI, dated September 21, 1999. It is unclear, however, as the record is devoid of supporting documentation, how OHI came to the attachment point used in its calculations, or if any of the money paid IGA was ever paid in Eligible Benefits to Covered Persons. Further, and somewhat remarkably, the same affiant (Mr. Rooney), on the very same day, signed a verified complaint in a related action against Gerber in which it was asserted by OHI that Gerber owed it $171,704, again without any documentation or explanation of the contradictory calculations.

Finally, Part III (B) of the ASL policy requires the insured to submit monthly statements regarding the Eligible Benefits paid under the self-insurance policy in accordance with Part V, which sets forth the specific information necessary to comply with the monthly statement requirements. Gerber, however, expressly states that it received no such monthly statements or any information whatsoever from which it could calculate payments under the self-insurance policy or the attachment point.

OHI does not attempt to deny the foregoing, but rather asserts that the responsibility for submitting such information rested solely with IGA. That statement, however, is contra-

dicted by Part III (B) of the ASL policy which places the onus of such submissions on OHI *or* IGA. While Part V of the ASL policy states that IGA is responsible for submitting the monthly statements, it must be borne in mind that IGA is OHI's agent.

In sum, OHI has failed to demonstrate that it even filed for reimbursement from Gerber in compliance with the terms of the ASL policy and that if, in any event, it had sought reimbursement, that any liability exists on behalf of Gerber. Indeed, OHI had admitted that it lacked the material facts to support any action against Gerber and has further failed to demonstrate that it made any discernible attempt to acquire those facts. Indeed, this action was commenced before Gerber could possibly have calculated what, if anything, was owed OHI. Accordingly, the first cause of action is dismissed.

With regard to the second cause of action, there is no evidence that OHI requested such a letter, that Gerber was in any way obligated to provide such a letter, or, if such a refusal by Gerber did occur, that it contributed to a rejection by a bank. Moreover, OHI's request for a certification letter from Gerber allegedly occurred on June 26, 1999, four days before the ASL policy expired, rendering it impossible for Gerber to certify anything because it could not calculate the attachment point prior to June 30, 1999. In any event, the lender rejection alluded to by OHI occurred prior to its purported request of Gerber for certification. Accordingly, the second cause of action must also be dismissed. Concur—Nardelli, J. P., Tom, Saxe and Friedman, JJ.